UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GLENDAL BELLOU, et al.  PLAINTIFFS

v.  CIVIL ACTION NO. 3:08CV-60-S

UNITED STATES OF AMERICA  DEFENDANT

MEMORANDUM OPINION

This matter is before the court on motion of the United States to dismiss the action for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). (DN 20). The factual allegations in the complaint are not in dispute. Therefore, the court will construe the complaint liberally, and take as all uncontroverted factual allegations on the face of the complaint as true for purposes of this motion. *Skees v. United States*, 107 F.3d 421, 423 (6th Cir. 1977), *quoting Kroll v. United States*, 58 F.3d 1087 (6th Cir. 1995).

This action arose from the failure of personnel at the Kentucky Air National Guard facility to inform the plaintiff, Glendal Bellou, of the results of two prostate-specific antigen ("PSA") tests which indicated an elevated PSA level. The test performed on June 5, 1999 indicated a PSA level of 12.26 and the test on January 10, 2004 indicated a level of 18+. He contends that he did not learn of the test results until he sought them out in May of 2004. He alleges that because of the delay, he suffered the loss of his prostate due to cancer.

Bellou is a retired member of the U.S. Military. He joined the Army in 1968 and served in Vietnam. Upon discharge, he attended the University of Louisville. He later returned to the Army National Guard and then the Kentucky Air National Guard. He served tours in the Middle East during the Gulf War in 1991 and most recently in the Iraq War in 2003. Bellou retired from the National Guard in April 2005.

In August 1999, Bellou received a physical examination at the Kentucky Air National Guard base in Louisville during a Unit Training Assembly. He had blood drawn for a PSA test at that time. Bellou was not notified of the test results.

In January 2004, Bellou received another physical examination at the base and blood was again drawn for a PSA test. He was not notified of the second test results.

Bellou learned that other guardsmen had not been notified of their results and subsequently underwent prostate surgery. He then requested a review of his test results. He was informed of the results, that the PSA level was high, and was advised to see his civilian doctor immediately. Bellou was diagnosed with prostate cancer and underwent surgery on July 7, 2004. His entire prostate was removed during the surgery. Pathological tests later revealed that the cancer had migrated outside the prostate. Bellou contends that the failure to timely advise him of the test results caused him to suffer greater damage from the cancer.

The United States has moved to dismiss the action on the ground that the physical exams, of which the PSA tests were a part, were incident to Bellou's military service, and therefore barred by *Feres v. United States*, 340 U.S. 135 (1950).

The Federal Tort Claims Act ("FTCA") created a waiver of sovereign immunity under which the United States can be held liable for tort claims to the same extent as private individuals. 28 U.S.C. §2674. The FTCA exempts from the waiver of immunity "claims arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. The *Feres* doctrine, as it is known, extended the exemption claims for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 147. As noted in *Major v. United States*, 835 F.2d 641, 644-45 (6th Cir. 1987), "Review of...Supreme Court precedents makes it clear that in recent years, the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the

military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose." The Sixth Circuit has stated that "the *Feres* doctrine extends beyond situations where the soldier is acting pursuant to orders or while subject to direct military command or discipline." *Sidley v. United States*, 861 F.2d 988, 990 (6th Cir. 1988). In the recent case of *Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009), the court held that the plaintiff's inactive status as an ROTC cadet did not render his claim exempt from application of the *Feres* doctrine.

In this instance, Bellou was a member of the National Guard until his retirement in 2005. He received the physical exams in the course of activity incident to service. Both physicals were given on Unit Training Assembly days at the base. He was provided these physicals because of his military status. Servicemen's medical malpractice claims have been consistently barred under the *Feres* doctrine. *Sidley v. United States*, 861 F.2d 988, 990 (6th Cir. 1988)(listing cases); *Skees v. United States*, 107 F.3d 421, 424 (6th Cir. 1997). Bellou urges that when he finally received his test results, he was in "civilian status" and was told to seek treatment from his civilian doctor. Thus he received no benefit from the government with his treatment. However, as noted in *Sidley*, 861 F.2d at 991, "While the existence of an alternate compensation system, such as the VBA, makes the sometimes harsh effect of the *Feres* doctrine more palatable, the denial or unavailability of these benefits does not affect the applicability of the *Feres* doctrine."

As Bellou did not retire from the National Guard until 2005 and received his physicals in conjunction with his unit training, the *Feres* doctrine bars his suit. The cases upon which he relies are distinguishable from the case at bar inasmuch as the plaintiffs were injured by military medical personnel after discharge from military service. Trudi Bellou's claim for loss of consortium are barred to the same extent as the claims of her husband. *Brown v. United States*, 451 F.3d 411 (6th Cir. 2006).

Finally, in urging that the *Feres* doctrine is unconstitutional, Bellou relies upon a dissenting opinion in a Ninth Circuit case which is merely persuasive authority for this court. Neither the United States Supreme Court nor the Sixth Circuit have adopted the argument offered in the Ninth Circuit dissenting opinion. *See, United States v. Johnson*, 481 U.S. 681, 688, n. 9 (1987).

For the reasons set forth hereinabove, the motion of the United States to dismiss the action will be granted by separate order.

**IT IS SO ORDERED.**

October 27, 2009

**Charles R. Simpson III, Judge**
**United States District Court**